IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF TENNESSE (MEMPHIS)

Serdar TATAR, plaintiff.

        v.                           Civil Action

Edu. Officer Griffin ; Edu. Super. Mrs. Beitlove;    No: _____

Rec. Super. Mr. Flowers ; Unit Manager Smith;

A.W. Childress ; Aw Avery ; Aw Frailer;    COMPLAINT

CMC Johnson (aka white Johnson), Warden

Bowers, SIS Jones, ~~SIA~~ Zebtaski (aka Ms.Z);    (Filed Pro-Se)

Unknown Officer(s) of the BOP @ DSCC

Grand Prarie, TX ; et al. Defendant's

---

I.  Jurisdiction And Venue

1) This is a civil action authorized and brought pursuant to
the, Bivens v. Sixunknown Agents of the FBN, 403 U.S. 388 (1971), to
redress the deprevation, under the laws of the land, of rights
secured by the Constitution of the United States. This Court has
jurisdiction under 28 U.S.C. § 1331 and 1343 (a)(3), authorized
by 28 U.S.C.§§ 2201 and 2202 the Plaintiff seeks declaratory
relief; furthermore, Plaintiff seeks Injunctive relief pursuant
to 28 U.S.C. §§ 2283 and 2284 and Rule 65 of the Federal
Rules of Civil Procedure.

1.

2.) The District Court for the Western District of Tennessee (Memphis Division) is an appropriate venue under 28 U.S.C. Section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

II. 3.) Plaintiff, SERDAR TATAR, is and was at all times mentioned herein an incarcerated individual in custody of the Federal Bureau of Prisons, Federal Correctional Institution FCI Memphis, located at 1101 John A. Denie Rd., Memphis, T N 38134. Plaintiff is currently confined in the Special Housing Unit - B-Upper - 211 at the above address.

III. 4.) Defendant's, (Full names are not available at this time) Edu. Officer Griffin, he is a teacher at Education Dept. of FCI Memphis. He is legally responsible for day to day operations of the Education Department as a full-time employee of the Federal Government.

5.) Education Supervisor Best-Love, she is the Education Department's Supervisor. She is legally responsible for over-all operations of the Education Department at FCI Memphis. At all times mentioned in this complaint, Mrs. Best-Love was acting in her official and individual capacity.

2.

Defendants (Cont.)    (Full names are not available at this time)

6.) Recreation Supervisor Officer Flowers, is an employee of the Federal Bureau of Prisons, at all times mentioned in this complaint, held the rank of " Acting Supervisor of the Education Department and was assigned to FCI Memphis. He was the 'Acting Supervisor' in the absence of Mrs. Best-Love, and he is and was legally responsible for over-all operations of the education department at FCI Memphis. At all times mentioned in this complaint Mr. Flowers was acting in his official and individual capacity.

7.) Unit Manager Smith, is an employee of the Federal Bureau of Prisons, at all times mentioned in this complaint, he held the rank of Unit Manager, his duties are to manage inmate's day to day activities as a supervisor. His responsibilities relevant to this complaint but not limited to processing Administrative Remedy Complaint's filed by inmate's under his immediate supervision. At all times Mr. Smith was acting in his official and individual capacity.

8.) Assistant Warden Childress, he is an Associate Warden. who's legal responsibilities cover over-all operations of the Memphis FCI on a daily basis, and at all times he was acting mentioned in this complaint he was acting in his official and individual capacity.

9.) Assistant Warden Avery, he is another Associate Warden—

3.



Defendant's (Cont.)    (Full names are not available at this time)

9.(Continued.) who's legal responsibilities cover over-all program operations / Administrative Remedy Coordinator and other daily responsibilities at FCI Memphis and it's sattlite camp, and at all times mentioned in this complaint he was acting in his official and individual capacity.

10.) Assistant Warden Fraizer, he is yet another Associate Warden who's legal responsibilities are virtually identical to the previous Associate warden's, and at all times mentioned in this complaint he was acting in his official and individual capacity.

11.) CMC Johnson (a.k.a. White Johnson), Mr. Johnson is an acting Case Manager Coordinator, in the absence of Mrs. Samatha Smallwood (CMC), he is legally responsible also as a Unit Manager and his duties are to manage inmate's day to day activities as a supervisor. His responsibilities relevant to this complaint but not limited to processing Administrative Remedies Complaint's filed by inmates under his supervision. At all times Mr. Johnson was acting in his official and individual capacitiy.

12.) Institutional Warden, Mr. Bowers, he is the Executive—

4.

Defendant's (Cont.)    (Full names are not available at this time)

contid.) Head, the Warden of FCI Memphis, he is legally responsible for all activities of both inmate and staff conduct at the local level (FCI Memphis) At all times mentioned in this complaint Mr. Bauers was acting in his official and individual capacities

13.) SIS Jones, is a Lieutenant Officer at FCI Memphis, he is legally responsible for investigating inmate and staff misconduct/ Policy violations but not limited to an investigatory authority. At all times mentioned in this complaint Mr. Jones was acting in his official and individual capacity.

14.) SIA Zebtaski (Phonetic - also known as Mrs. Z), she is the Investigation Administrator / Supervisor, her legal responsibilities include but not limited to investigating criminal acts committed by both staff and inmates at FCI Memphis At all times mentioned in this complaint Mrs. Z was acting in her official and individual capacity.

15. Unknown Officer[s] of the BOP at D.S.C.C. Grand Prairie, TX. The unknown officers at Designation Security Classification Center located at Grandprarie, TX are legally responsible for assigning designations and security level to Federal Inmates and at all times mentioned in this

5.

<u>Defendant's (Cont.)</u>    (Full names are not available at this time)

15.(Cont.) — complaint the unknown officer[s] located at Designation Security Classification Center, Grand Prarie, TX were acting in their official and individual capacity[ies]

16.) United States of America is the `Superios Atendant,' United States is the employer of all of the named defendant's who were acting under the color of federal law. United States, as the employer Superior is legally responsible for the actions of it's employees who were at all times mentioned in this complaint acting in their official capacities.

17.) Each defendant is sued individually and in his or her official capacity, at all times mentioned in this complaint, each defendant acted under the color of state and federal law.

III. <u>FACTS</u> (Concerning Mr. Tatar's Retaliation Claim, ~~First~~)

18) On or about the first or second week of October, 2022, during Plaintiffs regular work assignment at FCI Memphis, Education department. The Plaintiff, Sardar Tatar, walked to the adminis-trative office in order to access and use the copy machine.

6.

II. FACTS (Cont.) (Concerning Retaliation Claim)

19.) Upon discovering the administrative office door was locked, not being able to gain access to the copier, Mr. Tatar walked down a corridor of where staff offices and class-rooms are located, to find a staff member to unlock the said door. Plaintiff did not see any staff at their office and walked back to the area where the copy machine is located. Mr. Tatar then saw Mr. Griffin (Defendant no 1.) and simply signaled for him to unlock the door for use of the copy machine. Mr. Griffin held up an index finger, signalling (a universally accepted sign which indicates waiting, hold, etc...) wait.

20.) The Plaintiff left the area, returning to his work area at the Law Library, sought to request another staff to unlock the door preventing him from being able to use the copy machine. Mr. Tatar did not find any one else at that time. Approximitly 10 minutes later, Plaintiff saw another staff member namely, Tonya Harmon, (Education Staff/Teacher Officer), entering the education department via the front entrance entrance. The plaintiff politely made the same request to unlock door preventing him from using the copy machine. Ms. Harmon similarly told Mr. Tatar to hold on.

7.

III. FACTS (Cont.)   (Concerning Retaliation Claim)

21.) A few minutes later Ms. Harmon made her way from the office and motioned for Mr. Tator to follow her to allow access to the copy machine. Mr. Tator having noticed a secondary hallway/dividing door being locked informed Ms. Harmon about it. Ms. Harmon responded 'not to worry, that she, Ms. Harmon did not want the secondary hallway/dividing door to be locked because she was alone with library full of inmates, because she was alone.' ⊕

22.) As Ms. Harmon and Mr. Tator (inmate/Plaintiff) walked toward the door at which point Mr. Griffin (Defendant No.1) appeared on the opposite side of the secondary hallway/dividing door preventing entry through to Education Staff Ms. Harmon, and inmate Mr. Tator. Mr. Griffin was yelling; that the door was locked and that it would remain locked' to Ms. Harmon; who in turn protested saying that she did not want the door to be locked because, she was alone on her side of the building, and an argument between the two Education Staff ensued.

23.) As the two staffe went back and forth ( are ~~doing~~ locking Mr. Griffin) and (the other unlocking the door ~ Ms. Harmon). Mr. Tator backed up and walked away saying; that —

8.

III. FACTS (cont.)   (concerning Retaliation Claim)

23.) Cont - he did not want to have any thing to do with that (concerning the argument between the two staff), that he would wait, he'll make the copies later, trying to end the altercation. Mr. Griffin using his masculinity and the leverage of his body started to aggressively slamming the door to lock it again after Ms. Harmon had unlocked it once more, and Mr. Griffin Ms. Harmon was struck on her upper left shoulder several times by Mr. Griffin slamming the door,

24.) At that point the Plaintiff, Serdar Tatar left the corridor where the two staff were arguing and went back to his designated work area. Ms. Harmon directed the Plaintiff who did not want to make copies any more to follow her to the copy machine, and Mr. Tatar was obliged. Mr. Griffin was still at the same location, physically blocking entry way through the hallway, now with the door unlocked and threatening Mr. Tatar saying; "You better not come here Tatar", while pointing intently with his index finger at Mr. Tatar. The plaintiff did not move past the threshold, asked Mr. Griffin if he was threatening him. To which Mr. Griffin repeated his threats against Mr. Tatar. Ms. Harmon was asking Tatar to hand over the documents which he wanted copied, at which point Mr. Tatar again walked away.

9.

III. FACTS (cont.)    (Concerning Retaliation Claim)

25) The plaintiff was informed by a concerned party at a later date that Ms. Harmon filed a complaint (memorandum against Mr. Griffin and she placed the Plaintiff's name as a witness to the events. Mr. Tator was also informed by the same uninvolved concerned party that the S.I.S (Special Investigation Services), and other executive and administrators will be inquiring about the said staff altercation.

26.) The following morning Mr. Tator was removed from his assigned work area by Lt. Williams who accompanied Mr. Tator to the Lieutenant's Office, where also Institutions Captain Office is located. X ⸺ Mr. Tator was directed to enter the Captain's Office. Upon entry Mr. Tator found in the office the Associate Warden, Mr. Childress and S.I.S Lt. Jones.

27.) Mr. Tator asked to sit down and interview ensued. Mr. Childress asked about the staff altercation to the Plaintiff, and Mr. Tator's first words were that he "did not want to be retaliated against", because of this. Mr. Childress assured Mr. Tator verbally that, he will not be retaliated against and guaranteed it.

10.

III. FACTS (cont.)  (Concerning Retaliation Claim)

28.) Mr. Tator required that his official statement be that "I can neither confirm or deny the existence of any altercation between any staff members". And further stated that he did not want to be involved for fear of retaliation. However, due to internal-self-conflict of witnessing a female officer being assaulted by another staff member namely, Mr. Griffin, Mr. Tator conveyed the events to Mr. Childress and Mr. Jones as it has been above.

29.) The following week after the interview Mr. Tator was informed that he is being fired from his work assignment from the Law Library. Mr. Tator was fired by Acting Education Supervisor Mr. Flavers at all times Mr. Flavers was acting in his individual and official capacity under the color of federal law.

30.) Mr. Flavers confirmed when inquired by ~~way~~ Mr. Tator as to the reason of being fired, saying; ("I (Mr. Flavers speaking) heard you made a statement"...) Mr. Tator casually notified Mr. Flavers that firing him because of 'that' was against the law and that it was retaliation, which Mr. Flavers just ignored.

11.

III Facts (Cont.)   (Concerning Retaliation Claim)

31.) Mr. Tator having been fired arbitrarily, having been assured of non-retaliation, spoke to Associate Warden Mr. Childress and notified him of having been fired. Mr. Childress never addressed this despite his promise to Mr. Tator that he would not be retaliated against.

32.) Mr. Tator then sought to be re-instated to his assigned job by speaking to the New and Permanent Supervisor of Education Mrs. Best-Love. Mrs. Best-Love, prior to speaking with Mr. Tator had a long meeting with Mr. Griffin at her office while Mr. Tator was immediately outside her office at the waiting area. Mr. Tator inadvertantly overheard Mr. Griffin and Mrs. Best-Love speaking about the incident between him and Ms. Harmon, and discussed at length concerning my request to be re-instated in a written request.

33.) Mr. Tator entered Mrs. Best-Love's office next and Best-Love stated: "Yeah! We need to talk about this" referring to my written request. Despite Mr. Tator's ardent try to be re-instated he was denied the request by Mrs. Best-Love. Despite Mr. Tator's explanations, and notifying the defendant of a claim of retaliation, Best-Love refused and caused Mr. Tator being sent to SHU further.        Id.

III. FACTS (Cont.)  (Concerning Retaliation Claim)

34.) A couple of day's later Mr. Tator was placed in the Special Housing Unit, (S.H.U. based on an "investigation concerning the events described above"), on November 1, 2022. Mr. Tator learned by an Administrative Detention Order, that he was placed in the segregation unit due to an SIS Investigation and that the Order was given by Associate Warden, Mr. Childress. (Mr. Tator learned this upon information from a non-party to this suit, but was later confirmed by Mr. Childress.)

35.) During the "walk through" of the executive staff, (a walk through is a weekly meeting conducted by the executive staff who walk around in the special housing units to address and update inmate concerns who are segregated for various reasons.) the Plaintiff tried to speak with Associate Warden Mr. Fraizer, who upon Mr. Tator addressing the 'retaliation' concerns diliberately walked away in mid-sentence completely ignoring the Plaintiff. Mr. Tator was able to get the attention of Mr. Avery (also an Associate Warden), and asked him to confirm the reason of his placement in the SHU. Mr. Avery addressed and confirmed the reason of his placement in segregation despite Mr. Tator's protests of retaliation, and informed Tator that he will be transferred.

13.

III. FACTS (Cont.)    (Concerning Retaliation Claim)

36.) The Plaintiff continued to try addressing his issues through filing administrative remedies, specifically Mr. Tatar filed a BP-8 and gave it to Mr. Johnson (CMC/Unit Manager full name unavailable, a.k.a. White Johnson). Plaintiff has never received an answer to his BP-8, because Mr. Tatar never received a copy of his BP-8 from Mr. Johnson (Defendant), he suspected foul play and proceeded to file a 'Sensitive' BP-9 Administrative Remedy (A BP-9 is a form filed to the Warden of the facility to redress inmate legal issues/complaints) On 11-21-2022 and Plaintiff's administrative remedy request was immediately rejected on 11-23-2022, right before the Thanks Giving Holiday for not providing enough copies. The rejecting staff knew Mr. Tatar had no access to a copy machine while in segregation. Mr. Tatar having learned through experience with Administrative Remedy process and the BOP's abuse of the Prisoner Litigation Reform Act, by not following thee letter of the laws, also filed a BP-10 with the Regional Office of the Federal Bureau of Prisons. This issue have also been directly addressed to the Central Office with out BP-11 because of the responsible staff's efforts to stifle Mr. Tatar's efforts in further retaliation; as well as the U.S. Department of Justice Office of Professional Responsibilities in Complaint of Reprisal. Mr. Tatar made every effort available to him to exhaust remedies.

14.

III. FACTS (cont.) (Concerning Retaliation Claim Ends on 37.)

37.) As part of defendant(s) campaign of retaliation against the Plaintiff, he has been designated to be transferred to another facility. (Prior to this incident which led Mr. Tator to be retaliated against; Mr. Tator's [6] repeated requests was to be transferred to a closer, low security prison were Rejected. This information is relevant in terms of Mr. Tator's separate claim of discrimination against the Unknown Officers of the BOP @ DSCC, Grand Prairie, TX.

III FACTS. (Concerning Discrimination Claim Against the Defendant's, "Unknown Officers of the BOP @ DSCC, Grand Prairie, TX.)(DSCC: Designation Security Classification Center.)

38.) Mr. Tator has been in the custody of the Federal Bureau of Prisons since May 7, 2007. Mr. Tator was convicted via jury verdict and sentenced to 396 months of imprisonment for Conspiracy to Murder Members of the United States Military 18 U.S.C.§1117 and he was Aquitted on Attempted Murder charges under 18 U.S.C.§1114. (Mr. Tator maintains his innocence, and currently still appealing his case.)

39.) The Plaintiff have had "low security custody points" and had "camp points" since at least 2016. Mr. Tator spoke to and filed numerous grivences and even filed a-

15.

III. FACTS (con't) (Concerning Discrimination Claim)

39) (continued) - civil rights violation claim in this Court, which
was later dismissed. (case number currently not available,
the case was dismissed by Sheryl H. Lipman, specifically
issue concerning custody-classification-and-at dated policy).


40.) Mr. Tater has been put in for a transfer at least
six separate times with staff recommendations that he
should be sent to a lower security custody closer to
his residence prior to his arrest and subsequent
conviction. Mr. Tater was denied transfer at least twice
before the passage of the First Step Act of 2018, and
at least four times after. The denials were specifically
rendered by the "Unknown Officers of the BOP @ DSCC,
and Mr. Tater's claim of illegal discrimination is based
on the treatment that he is receiving as only the possible
reason, being denied to a lower security institution, while
similarly situated inmates are receiving their transfers to
low security according to BOP policy. At all times Mr.
Tater claims that he is being treated differently than others
prisoners, and Petitioners treatment is not based on rationally
rationally related legitimate government interest.

16.

III. FACTS (Cont.) (Concerning Discrimination Claim)

41.) The specific BOP policy concerning Custody & Classification is out-dated (last updated 2009), and ~~treats~~ is contrary to the current existing laws which dictate what is and is not a "violent crime". Under the out-dated policy, Mr. Tatar's single count conspiracy conviction is listed under, what the BOP Policy dictates, as a "violent crime". Because of this ~~out~~ out-dated policy application Mr. Tatar has been assigned a ~~"Public staff~~ "Public Safty Factor" for highest severity points (7) and a separate "Security Hold". ~~Mr. Tatar~~

42.) Mr. Tatar also has two other public safty factors, for being an alien resident, (Mr. Tatar holds a Permanent Resident Card) and because of his original sentence lenghth. According to the same policy neither of the public safty factors are a cause for Mr. Tatar not being transferred to a lower security institution near his residence.

43. Mr. Tatar claims that all of the forgoing have established, together and seperatly a claim of retaliation against him for excersizing his 1st Amendment Rights of Freedom of Speech and a Claim of Illegal Discrimination for Violating his right to Due Process and Equal Protection Clause of the Fourteenth Amendment right under the U.S. Constitution.

17.

## IV. LEGAL CLAIM

44.) These violations of Retaliation for making a statement against an officer who assaulted another officer (a female), who requested Mr. Tator as a witness on her complaint (memorandum is clearly a protected conduct under the law. Mr. Tator was threatened by the same officer who assaulted the female staff (Mr. Griffin assaulted Ms. Tanya Harmon), Plaintiff was fired from his job in the Law Library, and when he raised a complaint he was locked up in the SHU since November 1, 2022 and counting! And, is now being transferred to another facility.

45.) Similarly, Mr. Tator's civil rights were violated when the unknown officers at DSCC, Grand Prairie TX discriminated against him when they continuously denied Mr. Tator's transfer to a lower security institution, having applied out-dated policy which is contrary to the current laws of the land, have treated Mr. Tator disrespectly even though he was similarly situated with others. These actions violated Mr. Tator's rights to be free from discrimination under the Due Process and Equal Protection of the Laws of the United States Constitution.

The defendant's together and separately retaliated against the -

18.

## IV. LEGAL CLAIM

-45.) Continued- Plaintiff and were diliberately indifferent
The Plaintiff has no plain, adequate, or complete remedy at
law to redress the wrongs described in this complaint. The
Plaintiff has been and will continue to be irreparably injured
by the conduct of the defendant's unless this Court grants
declaratory and injunctive relief which plaintiff seeks.

## V. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that this Court
enter a judgement granting him:

46. A declaration that the acts committed by defendant's
herein violated Plaintiff's rights under the Constitution
and laws of the United States.

47. A preliminary and permanent Injuction ordering
defendant's Education Officer Ms Griffin; Education Super.
Mrs. Best-Love; Recreation Super. Mr Flavers; Unit Manager
Mr Smith; A.W. Childress; A.W. Avery; A.W. Frazier; CMC-
Johnson (aka white gehnson); Warden Bowers, SIS Jones,
SIA Zebtaski (aka Ms. Z.) and finally The the Unknown
Officer(s) of the BOP @ DSCC, Grand Prarie, TX et.al. ⟶

19.

V PRAYER FOR RELIEF (cont.)

47.) continued → total defendant's together and seperatly

48. Immidiately Stop Mr. Tator's transfer from FCI Memphis to FCI McKean;

49. That Mr. Tator be immediately be released from FCI Memphis SHU. back on the FCI Memphis general population;

50. That Mr. Tator be compensated for all lost property which took place as a result of the defendant's retaliation;

51. That Mr. Tator be further compensated for violation of his rights the damages which exceed the amount of $25.000.ºº against each defendant jointly and seperatly;

52. That the defendant's be charged with Punitive Damages for violating Plaintiff's Constitutional Rights in the amount of $50.000.ºº against each defendant and against defendant; Mr Griffin additional $100.000.ºº Dollars,

53. A jury trial on all issues trialble by jury;

54. Plaintiff's costs in this suit;

55. Any additional relief this court deems just, proper, and equitable.

Dated: December 22, 2022          Respectfully Submitted,

Serder Tator, 61281-066,

FCI Memphis, P.O. Box 34550,
Memphis TN. 38134

20.

Verification Certification of Mailing and Service

I, Serdar Tatar, pro-se, certify that all of the forgoing is prepared by me, and all factual allegations are true and correct to the best of my knowledge, memory and information. I further certify that the copies of all the documents have been sent to via U.S. Postal Service to the Clerk of the Court for processing and summons along with a copy of a motion for Appointment of Counsel, and a Request for an Emergency Injunction, Temporary Restraining Order. I, Serdar Tatar, execute this document on Dec. 22, 2022 in the absence of a Notary Public and pursuant to 28. U.S.C. §1746.

Serdar Tatar

21.